H. T. CHAPMAN, APPELLEE, v. ISAAC BREWER ET AL., APPELLEES, AND DES MOINES MANUFACTURING & SUPPLY COMPANY, APPELLANT.

FILED FEBRUARY 19, 1895. No. 5670.

1. **Mortgages:** MECHANICS' LIENS: PRIORITIES. "A party taking a mortgage on real estate is bound, at the time, to know

whether material has been furnished or labor performed in the erection, reparation, or removal of improvements on the premises within the four prior months." *Henry & Coatsworth Co. v. Fisherdick*, 37 Neb., 207, followed.

2. ———: ———: .———. "The lien of a mortgage on real estate taken while a building is in process of erection thereon, is subject to the claims of material-men and laborers for material already and thereafter furnished, and for labor already and thereafter performed in the erection of such building, when the commencement of such furnishing of material or the commencement of the performance of such labor was prior to the record of said mortgage." *Henry & Coatsworth Co. v. Fisherdick*, 37 Neb., 207, followed.

3. ———: ———: ———: EVIDENCE. Evidence may be introduced during trial to show that the date of the commencement of labor or furnishing material stated in the claim filed to perfect a mechanics' lien is erroneous and that the beginning of the labor or furnishing was of an earlier date, where the establishing of such prior date will only affect the rights of parties to the suit who were bound to take notice of the true date of the commencement of labor or furnishing material, and whose mortgage liens were acquired after such true date and prior to the time of filing the claim for lien, and who did not and could not depend upon it for notice of such date, and whose rights could not be and were not changed or affected by the statement of the date in the claim for lien.

4. **Appeal:** ISSUES NOT PRESENTED BELOW. In an appeal case, an issue not presented by the pleadings and not fairly within their scope, and, therefore, presumably not decided by the trial court, will not be considered in this court.

5. **Mechanics' Liens:** OATH. The oath required by statute to be made to a claim for a mechanic's lien may be upon information and belief.

6. ———: CORPORATIONS. The words "any person," used in the statute which provides for the filing of a mechanic's lien to designate who may acquire such liens, includes both natural and artificial persons, or corporations, and in this last signification is not confined to corporations created by virtue of the laws of this state, but applies to and includes foreign corporations or those formed under the laws of other states as well.

7. **Corporation:** EVIDENCE OF EXISTENCE. The proof in this case *held* to sufficiently establish the existence of the appellant company as a corporation to relieve it from collateral attack.

8. **Foreign Laws: PROOF.** Where there is no proof of the provisions of the statutes of a sister state, they will be presumed to be the same as those of our own state upon the subject involved.

9. **Pleading: CORPORATIONS.** Where a pleading in one portion of it contains a denial of the corporate existence of a company and in another paragraph of the pleading the issue is raised of the right of the company, as a foreign corporation, to acquire or enforce a mechanic's lien in this state, the pleading will be construed as an admission of the corporate capacity of such company.

10. **Mechanics' Liens: CORPORATIONS: VERIFICATION OF CLAIM.** A treasurer and book-keeper of a corporation, where the articles of incorporation require every officer of the company to be a stockholder, may verify the claim for a mechanic's lien.

11. ——: **WAIVER BY TAKING MORTGAGE.** The acceptance of a mortgage by a mechanic's lien-holder, covering the property to which the mechanic's lien has attached, will not be deemed a waiver of the former lien, where such was not the intention of the parties, and such additional security does not infringe upon the rights of other parties.

12. ——: **STATEMENT FOR LIEN.** The statement in regard to a lien, contained in the contract for furnishing material, etc., the basis for the claim of mechanic's lien, *held* not to be a waiver of the right to the statutory lien.

APPEAL from the district court of Cedar county. Heard below before NORRIS, J.

A statement of the case appears in the opinion.

*E. E. Byrum,* for appellant:

Appellant's mechanic's lien is superior to the mortgage. (*Doolittle v. Plenz,* 16 Neb., 153; *Manley v. Downing,* 15 Neb., 639; *White Lake Lumber Co. v. Russell,* 22 Neb., 129; *Rogers v. Omaha Hotel Co.,* 4 Neb., 58; *Great Western Mfg. Co. v. Hunter,* 15 Neb., 37; *Ballou v. Black,* 17 Neb., 389.)

Appellant's corporate capacity was sufficiently shown. (*Conard v. Atlantic Ins. Co. of New York,* 1 Pet. [U. S.], 386; *Durham v. Hudson,* 4 Ind., 501.)

The verification of the lien was made by a proper person. (*Great Western Mfg. Co. v. Hunter*, 15 Neb., 38.)

The oath for a claim made upon information and belief is sufficient. (*Dorman v. Crozier*, 14 Kan., 224; *City of Atchison v. Bartholow*, 4 Kan., 124.)

Appellant did not waive its mechanic's lien by taking a mortgage. (*Miller v. Fin*, 1 Neb., 255; *Delaware Railroad Construction Co. v. Davenport & St. P. R. Co.*, 46 Ia., 406; *Great Western Mfg. Co. v. Hunter*, 15 Neb., 38; *Hoagland v. Lusk*, 33 Neb., 376; *Irish v. Pulliam*, 32 Neb., 24; *Bissell v. Lewis*, 56 Ia., 239.)

Appellant had a right to show that work began prior to the date fixed by the claim for a lien. (*Doolittle v. Plenz*, 16 Neb., 156; *Davis v. Hines*, 6 O. St., 473; *Thomas v. Huesman*, 10 O. St., 152; *Knutzen v. Hanson*, 28 Neb., 591.)

*Miller & Son, B. Ready*, and *Davis, Gantt & Briggs, contra:*

Appellant's claim for a lien should have been positively verified. (*Dorman v. Crozier*, 14 Kan., 224; *City of Atchison v. Bartholow*, 4 Kan., 124; *Ex parte Bank of Monroe*, 7 Hill [N. Y.], 177; *Globe Iron Roofing & Corrugating Co. v. Thatcher*, 6 So. Rep. [Ala.], 366.)

The mortgage lien is superior, because it is shown on the face of the mechanic's lien that no work was performed or material furnished for the building upon which the mechanic's lien is claimed, until after the mortgage was recorded. (*Olson v. Heath Lumber Mfg. Co.*, 33 N. W. Rep. [Minn.], 791; *Goss v. Strelitz*, 54 Cal., 640; *Russell v. Bell*, 44 Pa. St., 54; *Dearie v. Martin*, 78 Pa. St., 55; *Sherry v. Schroage*, 48 Wis., 93; *Armstrong v. Hallowell*, 35 Pa. St., 485; *Vreeland v. Boyle*, 37 N. J. Law, 346; *Minor v. Marshall*, 27 Pac. Rep. [N. M.], 481.)

If any lien existed in favor of appellant, it was waived by the taking of a mortgage. (*Goble v. Gale*, 41 Am. Dec. [Ind.], 219; *Pease v. Kelly*, 3 Ore., 417; *Nason v. Potter*,

6 Vt., 28; *Gilman v. Brown*, 1 Mason [U. S.], 191; *Kinsey v. Thomas*, 28 Ill., 505; *Gardner v. Hall*, 29 Ill., 277; *Gorman v. Sagner*, 22 Mo., 137; *Barrows v. Laughman,* 9 Mich., 213.)

*A. M. Gooding*, also for appellees.

HARRISON, J.

This action was instituted in the district court of Cedar county by the plaintiff H. T. Chapman to foreclose a real estate mortgage, executed and delivered to him by Isaac and Lucinda Brewer, upon property described in the petition, situated in Cedar county. The other parties made defendants to the action, in addition to the Brewers, were the Cedar County Bank and the Des Moines Manufacturing & Supply Company. The defendant company answered and filed a cross-bill, in which it claimed a mechanic's lien prior in point of time to either of the mortgages. The Cedar County Bank filed an answer or cross-petition setting up a lien by mortgage executed and delivered to it by the Brewers, claiming it to be second and subsequent only to plaintiff's mortgage. Plaintiff filed a reply to the answer and cross-petition of the company, by which was raised the question of the priority of the mechanic's lien of the company. Upon trial the court determined and adjudged that the liens of the plaintiff and Cedar County Bank were prior and superior to that of the company, and from this decree the company has appealed to this court.

In the original claim of lien filed which was introduced in evidence, there appears the following statement: "That on and between the 30th day of December, 1889, and the 25th day of January, 1890, they furnished lumber and materials and machinery supplies and labor for said building," etc. The mortgage to Chapman was dated November 15, 1889, and recorded November 21, 1889, and the mortgage of the Cedar County Bank was dated November

15, 1889, and recorded November 27, 1889. In the an-. swer, or cross-petition, of the Des Moines Manufacturing & Supply company it was stated that work was commenced November 5, 1889, in and on the mill, by a party sent by it from Des Moines for such purpose, and the proof shows that work was so commenced by their workman, Morris, on the 5th or 7th of November, 1889, and that some of the material was furnished during the month of October immediately preceding. In the bill, or statement of account, attached to the claim of lien there is, of date December 31, 1889, an item of charge in the following words, viz.: "50 days by Morris to Dec. 31, '89, @ $4, $200." It is strenuously argued that the company is bound by the statement in the claim filed in reference to the dates between which the labor was performed and material furnished, and that the evidence introduced, of a different and earlier date of the commencement of such labor, etc., was incompetent and could not be received to vary or change the date assigned in the claim as it appeared of record. It may be well, in order to fully and properly understand the situation of the parties, to state here that the claim of lien was filed March 17, 1890. The statute of this state in regard to mechanics' liens is as follows: "Any person entitled to a lien under this chapter shall make an account, in writing, of the items of labor, skill, machinery, or material furnished, or either of them, as the case may be, and, after making oath thereto, shall, within four months of the time of performing such labor and skill, or furnishing such machinery or material, file the same in the office of the register of deeds," etc., and does not require that the dates of performance of labor or furnishing material shall be stated in the claim for lien; and where it appears from the affidavit filed and the accompanying account of labor or material that such performance and furnishing were within the time required by the law to entitle the claimant to a lien it is sufficient. The lien papers in this case disclose that

the last labor was performed, or material furnished, January 25, 1890, and the claim filed March 17 of the same year. This fulfilled the requirement of the statute. In *Noll v. Kenneally*, 37 Neb., 879, this court stated the rule to be as follows: "The failure of an account filed to secure a mechanic's lien to state the dates the various items of materials were furnished will not vitiate the lien, if it appears from the account and affidavit thereto attached that such materials were furnished within the requisite time to entitle the claimant to a lien therefor." In *Henry & Coatsworth Co. v. Fisherdick*, 37 Neb., 207, it was held: "A party taking a mortgage on real estate is bound, at the time, to know whether material has been furnished or labor performed in the erection, reparation, or removal of improvements on the premises within the four prior months;" and further, "the lien of a mortgage on real estate, taken while a building is in process of erection thereon, is subject to the claims of material-men and laborers for material already and thereafter furnished, and for labor already and thereafter performed, in the erection of such building, when the commencement of such furnishing of material, or the commencement of the performance of such labor, was prior to the record of said mortgage." Applying the rules of law as announced by this court, just quoted, to the facts in the case at bar, and further bearing in mind that by the provisions of our statute on the subject under discussion the lien attaches at the commencement of the labor or furnishing material, and the relative positions of the liens involved are not, in so far as they are governed by their respective dates, very difficult to ascertain or of assignment. The fact that the date of the commencement of labor or furnishing of material was stated to be December 30, 1889, when it should have been November 5th or 7th, could not, and did not, have any significance for or to mortgage lien-holders, or in any manner affect their rights under the mortgages executed during the month of November at a time

when the work and furnishing which were the foundation of the lien were in progress, and had been from a date prior to such execution, as they were bound to take notice of these things, and their mortgages were taken subject to any rights of lien which had accrued or attached in favor of mechanics or material-men. Their rights were acquired long prior to the time the statement was filed in which appeared the erroneous date, and such statement was not notice to them, nor could or were their liens or rights in any way affected by it, and the evidence of the true date was competent and its reception in no manner or extent harmful or prejudicial to the parties holding the mortgages. (2 Jones, Liens, sec. 1066; *Wakefield v. Latey*, 39 Neb., 285.)

It is argued that it appears upon the face of the original claim of lien, filed by appellant, which was introduced in evidence, that the claim was verified before Gardner V. Wright, a notary public, and who was secretary of the appellant company, and also shown by the articles of incorporation to be a stockholder therein and thus directly interested, and that being so interested he was incompetent to administer the oath to the party verifying the lien. However this may be, it was not, we think, sufficiently raised by the pleadings and was, evidently, not an issue in the trial court and cannot be considered in this court. It is further urged that the verification of the claim of lien was upon information and belief, and that it should have been sworn to positively to fulfill the requirements of our statutory provisions in regard to the verification of a claim for a mechanic's lien. Such has been stated to be the rule in Kansas, under a statute very similar in its exactions in this respect to our own. (*Dorman v. Crozier*, 14 Kan., 224. See, also, *Globe Iron Roofing & Corrugating Co. v. Thatcher*, 6 So. Rep. [Ala.], 366). But this court in construing the provisions of the mechanic's lien law has invariably announced and adhered to the doctrine that they must be given a liberal construction, agreeably to which it

has been held that the oath may be made by an agent.
(See *Great Western Mfg. Co. v. Hunter*, 15 Neb., 33.) And
in a case such as is the one now under consideration,
where the oath must necessarily be made by some one
for the corporation and whose only knowledge of the
transaction from which the claim for lien arises is, from the
inherent nature of the business, derived from information
and very frequently may not be personal or direct, it would
seem very proper to apply the rule of liberal construction,
and that an oath made upon information and belief must
be adjudged a compliance with the requirements of the
mechanic's lien statute, wherein it states that the claim for
lien should be filed "after making oath thereto," and is a
"making oath thereto" within these words when liberally
construed. Nor are we without authority to support such
views. In Missouri, where the statute provides, referring
to the claim for lien, "which shall in all cases be verified
by the oath of himself or some credible person for him"
(Rev. Stats., Mo., 1889, sec. 6709), it was held, in the case
of *Finley v. West*, 51 Mo. App., 569, that "an affidavit on
belief of the affiant is a substantial compliance with the
lien law." (See, also, Phillips, Mechanic's Liens, sec. 366a.)

Another contention is that our statute provides for a lien
in favor of "any person" and not in favor of a corpora-
tion, and that a corporation cannot acquire a lien under
our statutes. "Persons also are divided by the law into
either natural persons or artificial. Natural persons are
such as the God of Nature formed us. Artificial are such
as are created and devised by human laws, for the purposes
of society and government, which are called corporations,
or bodies politic." (1 Blackstone Commentaries, 123.)
"Enactments which related to persons would be variously
understood, according to the circumstances under which
they were used, as including or not including corporations.
In its legal significance it is said the word ' person ' is a
generic term and as such, *prima facie*, includes artificial as

well as natural persons, unless the language indicates that
it is used in a more restricted sense;" and further: "If
any general rule can be drawn from the decisions it would
be this: that where the act imposes a duty towards or for
the protection of the public or individuals, grants a right
properly common to all, and from participation in which
the limited character of corporate franchises and the ab-
sence of any natural rights in corporations do not, by any
policy of the law, debar them, the term ' persons ' will, in
general, include them whether the act be a penal or a re-
medial one." (See Endlich, Interpretation of Statutes, secs.
87, 89, and cases cited.). We are satisfied that the word
" persons " in our mechanic's lien law includes an artificial
person, or corporation.

It is further insisted, and very strenuously, and we will
discuss it here, for it is directly connected with and is a
branch of the subject last considered, *i. e.*, the right of a
corporation to file and hold a lien, that the appellant com-
pany was a foreign corporation, and if it should be decided
that a home or domestic corporation could acquire or
possess a mechanic's lien it would not extend to and in-
clude a foreign corporation as competent to do so.   There
are authorities to the effect that wherever corporations are
embodied under the term "persons" it will be construed
to embody only such as are formed under the laws of the·
state enacting the statute so construed; but we do not be-
lieve it was the intention of our legislature in the use of
the words " any person" to restrict their meaning, but
they were used in their largest and most extended sense·
and meaning, and to include both foreign and home corpo-
rations as well as natural persons.   There was a denial of
the corporate existence of appellant company, and it is con-
tended that there was no sufficient proof of the corpora-
tion.   The articles of incorporation, signed by the incor-
porators and acknowledged before a notary public, and
showing, by indorsement thereon, to have been filed and

recorded in the office of the recorder of Polk county, Iowa, and also filed and recorded in the office of the secretary of state of Iowa, were introduced in evidence, and proof was made of the user of the corporate rights and powers by the company and its engagement in business for a considerable length of time.   There was also offered and received in evidence what purported to be a copy of the statutes of the state of Iowa, but it was not sufficiently identified to make it competent under the rule governing the introduction of such testimony in our state, but in the absence of proof the statutory law of the state of Iowa, in relation to the subject involved, *i. e.,* the creation of a corporation, must be presumed to be the same as ours. (*Scroggin v. McClelland,* 37 Neb., 644.)   This being true, there was proof which established the existence of at least a *de facto* corporation, or such an one that its existence could not be collaterally attacked.   It may be added here that if the proof of the corporate capacity of the corporation was insufficient, or failed, the appellee, after denying such fact, alleged affirmatively that the company could not hold a mechanic's lien for the reason that it was a foreign corporation.   This, we think, should be treated as an admission of the corporate existence of the company.

The objection was made that the party making 'oath to the lien was not a competent party to do so.   D. H. Buxton, who verified the claim, states in his oath that he is the book-keeper and treasurer, a member of the firm of Des Moines Manufacturing & Supply Company.   Of the articles of incorporation of appellant company the tenth states that "no person shall be elected director or officer of this corporation who it not a stockholder."   From all the foregoing it appears that the person who made the oath to the claim of lien was an officer of the company, and, presumably, in accordance with the requirements of article 10 above quoted, a stockholder, and, moreover, the book-keeper of the company whose claim of lien he verified.   We think

this constituted him competent to make the necessary oath to the claim of lien, and when he had done so it was valid and sufficiently verified to meet the objection that it was not verified by a person who was a proper person to make oath to it for the company.

It appears that the appellant company received notes for the balance due it under its contract for furnishing the material and performing the labor upon the mill, and that these notes were secured by a mortgage upon the mill property, and the mortgage also covered other property. By so doing, it is claimed, it waived its right and lien under the lien law. The notes and mortgage were taken as security and were not, so far as the record disclosed, delivered as payment of the claim or account, or accepted as such or as in lieu of the lien, or looked upon or treated as a waiver of the lien or right to file the same.

In the case of the *Great Western Mfg. Co. v. Hunter*, 15 Neb., 32, it was held: "The contract for furnishing certain machinery for a grain elevator contained a clause as follows, in substance: 'Should shipment be made before payment in full the title, right of possession, and ownership of the aforesaid machinery shall remain in the above first party until the note is paid,' etc. Held not a waiver of a right to a mechanic's lien," and in the case of *Hoagland v. Lusk*, 33 Neb., 376, the rule was stated to be: "The acceptance by a material-man of a note and chattel mortgage as collateral security for materials previously furnished for the erection of a building under a contract with the owner is not a waiver of the lien of the material-man, unless such was the intention of the parties." In the text of the opinion is the following statement: "In January the firm of Lusk Bros. & Co. failed. At that time the plaintiff took a note executed by William S. Lusk, secured by chattel mortgage on some potatoes, as collateral security of the plaintiff's claim. The potatoes were subsequently sold under the mortgage and the proceeds applied towards the payment of the plaintiff's

demand. The note and chattel mortgage were not accepted by the plaintiff as payment, but simply as additional and collateral security, without any intention to waive the lien given by statute. The taking of the security did not affect the lien. Upon the proposition there is an irreconcilable conflict in the authorities. The rule which we have stated is, we think, sustained by the better reason. (*Ford v. Wilson*, 11 S. E. Rep. [Ga.], 559; *Howe v. Kindred*, 44 N. W. Rep. [Minn.], 311; *Hinchman v. Lybrand*, 14 Serg. & R. [Pa.], 32; *Montandon v. Deas*, 14 Ala., 33.)" (See, also, *Smith v. Parsons*, 37 Neb., 677; *Kilpatrick v. Kansas City & B. R. Co.*, 38 Neb., 621; *Union Stock Yards State Bank of Sioux City v. Abrams*, 42 Neb., 880; *Smith & Vaile Co. v. Butts*, 16 So. Rep. [Miss.], 242.)

We gather from the opinions of this court in which the subject of the lienor accepting other security than the lien allowed by statute has been discussed, that this court is committed to the doctrine that it is not a waiver of the statutory lien unless it appears that such was the intention, or, from the facts of the case, that it would be inequitable as between the parties to permit the holding of the further security and also the existence of the lien. We are aware that it has been held that if the party take a mortgage upon the same property upon which the statutory lien is claimed it is a waiver of the lien, or if it has been perfected by filing, etc., will displace it. In the decisions which we have examined in which the rule is so announced, the reason given or shown by the facts of the case for the doctrine was that other lien-holders had become such by relying upon the record as showing the relations of the other parties, and to permit the mechanic or material-man who had taken the mortgage to assert the right to the statutory lien would prejudice the rights so acquired. In the case at bar this can have no application or relevancy. It will be remembered that the appellees (mortgagees) received their mortgages after the company's rights to a lien had attached and

with notice of such right, or that they were required to take notice of it. They took their mortgages charged with notice of the appellant's right of lien and subject thereto, and as the company's mortgage was not in existence until long after theirs had been executed and recorded, the fact that it was made could in no manner affect them or their rights under their mortgages, and that it was created or had an existence did not or could not alter or vary the positions of their mortgage liens with reference to the appellant's statutory lien, or, as to it, either advance or displace them, and we cannot see wherein they can be prejudiced or an injustice done to them or their rights by permitting appellant to enforce its statutory lien or wherein the execution and delivery of the mortgage to appellant so affected their liens or rights as entitled them to assert that it was a waiver of the other lien, and, furthermore, as there is nothing in the case which shows, or from which it can rightfully be inferred, that the mortgage was accepted as payment, or which evinced an intention that it was to take the place or to be instead of the statutory lien or displace it, we conclude that the lien, as to this objection, must be upheld and was not waived by taking the subsequent mortgage or thereby rendered incapable of enforcement. In Jones, Liens, section 1013, the rule is stated to be: "The taking of a mortgage upon the same property upon which the creditor claims a statutory lien, may not displace the lien. The mortgage is regarded as a cumulative security, and the creditor may enforce either the lien or the mortgage. So also the taking of the collateral obligation of another person for the payment of the lien debt does not ordinarily debar the lien-holder from claiming the security of his lien, unless the circumstances are such that an intention to waive the lien may reasonably be inferred." (*Payne v. Wilson*, 74 N. Y., 348.) In *Howe v. Kindred*, 44 N. W. Rep. [Minn.], 311, we find the following statement: "The reason usually given in the adjudicated cases for holding that a mechanic

or material-man has lost his lien by taking security, either upon the property to which the lien attaches, or upon other property, is that subsequent lien-holders and purchasers have a right to rely upon the record, and should be protected against secret liens. * * * This reason is without force in the case at bar. The appellant took his mortgage long prior to any of the acts relied upon by him as constituting an extinguishment of the lien; and, when taken, it was subject to plaintiff's right to perfect a claim already attached to the premises. His situation has never been changed by anything plaintiffs may have done." In *Gilcrest v. Gottschalk*, 39 Ia., 311, it is said: "It seems to us that the taking of a mortgage from the debtor upon the same identical property covered by the mechanic's lien and for the same debt, cannot be deemed collateral security on the same contract. There is nothing in the record to show that the mortgage was intended and accepted as collateral security. It was not such unless so intended and accepted. (See 1 Bouvier, Law Dictionary, 240; Powell, Mortgages, 393.) The mechanic or material-man will retain his lien unless he does something evincing an intention to rely upon his new or collateral security and not upon the lien the law has given him. (*Clark v. Hunt*, 3 J. J. Marsh. [Ky.], 558.)"

It was stated in a written contract between the company and Isaac Brewer, pursuant to the terms of which the material, etc., was furnished for which the company claimed its lien, that "—— agrees that said Des Moines Manufacturing & Supply Company shall have a lien upon all the machinery, fixtures, etc., herein mentioned, and upon the building and real estate where said machinery is placed, to secure all claims of said company," and it is urged that by accepting or becoming a party to the contract with the above clause in it the company waived its right to a lien under the mechanic's lien law. The above agreement for a lien, if such it may be called, is a triumph of indefiniteness. It mentions

no kind of a lien, and no mention is made of whether one will be created in the future or whether it is to attach at the time of the execution of the contract or at some time during the progress of the labor or furnishing of material. It cannot be determined from its terms whether the parties viewed it as establishing a lien or as a mere statement that a mortgage would be executed at some subsequent date, and it does not appear that the appellees had it in view when they acquired their mortgage liens, or that their actions in taking the mortgages were in any manner or to any degree governed or affected by it; nor does it appear from the facts and circumstances of the case that when the contract was made there was any intention to waive the right of a lien under the statute or to accept what was given or to be given, as expressed in the contract, in lieu of the statutory lien. We do not think there was any waiver of the right to a lien by reason of the statement hereinbefore quoted, which appeared in the contract. In *Great Western Mfg. Co. v. Hunter, supra*, it is said: "As to the third subdivision of this point, that plaintiffs cannot have a mechanic's lien for the machinery furnished, for the reason that by the terms of the contract they retained a vendor's lien on the machinery, while I find some difficulties presented in some of the cases cited, yet, as it is a general principle of law that a creditor may have as many securities for his debt as he can obtain without infringing upon the rights of others, and as the rights of no other person have been by any possibility affected by the said clause in the contract, I do not deem it as an objection to the plaintiff's right to a lien." The appellant's lien was the prior and superior one, and the decree of the district court must be reversed wherein it declared it inferior and subsequent to the mortgage liens and a decree entered in this court establishing its priority.

DECREE ACCORDINGLY.